## City of Covington *vs.* Southgate.

APPEAL FROM KENTON CIRCUIT.

Though the Legislature may have the power constitutionally to extend the limits of towns and cities, and include adjacent lands without the consent of the owner, and which are not laid off into lots, and

ORD. PET.

Case 52.

15m 492
91   198
15m 491
99     9
m102 353
15bm 491
115   364
15bm 491
118   104
15bm 491
125   152

CITY COVINGTON
*vs.*
SOUTHGATE.

used as town property, (9 *B. Monroe*, 344,) yet the town or city cannot tax such property as town property and subject it to city burthens, without the consent of the owner, until it shall be laid off into lots, &c., and used as town property, when such parts so laid off may be taxed.

The facts of the case are clearly stated in the opinion of the court.

*Simmons*, for appellant—

The act of the Legislature of March, 1850, to include the lands of the appellee within the corporate limits of the city of Covington, provides that the lands of the appellee shall not be taxed by the city for two years from the passage of the act. At the time of the extension, some improvements had been made in the vicinity of the lands embraced. Others had laid off ground into lots and sold them, upon which houses have been built, and others are being built in the vicinity. Part of appellee's land is vacant, part used for pasturing stock, and part for agricultural purposes. This was the use to which the ground was appropriated until the suit was brought. About two hundred and twenty acres of appellee's land was embraced by the act of 1850. Since then he has sold part thereof, leaving about one hundred and sixty-seven acres, upon which the city imposed the tax complained of in the suit.

The grounds relied on for reversal are the following: 1. That the appellee consented to the extension of the city limits over his ground. The proof, it is insisted, sustains this ground. Root says that he, as plaintiff's agent, resisted the passage of the act of 1850; but he says that appellee, by letter, instructed him, if he could not prevent the passage of the law, to get a clause inserted in the act exempting it from taxation for the longest time he could. This was, in effect, a delegation of power to Root, the agent, to compromise the matter. There was a compromise by Root and Lindsey, as agents of appellee, and the extension agreed to on the condition that the land was not to be taxed for two years.

2. The second point relied on is, that the Legislature had the constitutional right and power to extend the corporate limits over the land of appellee, even against his consent. The Legislature has the same right to extend the corporate limits of a city or town that it has to pass an original act of incorporation. The authority to sustain this point is found in the case of *Cheaney vs. Hooser*, 9 *B. Monroe*, 345.

A reversal is respectfully asked.

*J. W. Stevenson and W. B. Kinkead*, for appellee—

The appellee seeks, by this suit, to recover back from the city of Covington $676, which he conceives to have been illegally exacted from him by the city, in the form of taxation. We contend that the lands which were taxed by the city were not subject to taxation as city property. It was levied upon his farm of about one hundred and sixty-seven acres, which lay some distance beyond the limits of the city of Covington, prior to the passage of an act of the Legislature of 1850, by which the limits of the city were greatly extended, and this land brought within the corporate limits. It lies beyond any improved part of the city—has never been laid out into lots, nor does the appellee desire to do so. It is not needed for city purposes, and its owner derives no benefit from its being within the corporation. There is considerable vacant land between it and the old limits of the city.

The appellant relies upon the consent, which it is alleged was given by appellee, that the land should be embraced within the city limits, provided it was not taxed for two years, and insist that it is necessary, in passing to and from improved parts of the city, to pass through the appellee's land, and claim the right to tax it.

Two questions are presented : 1. Is not the levy of a tax by the city authority and coercing it a manifest appropriation of private property to public use, contrary to the constitution ?

2. Did Southgate give his consent to the act of the Legislature of 1850, and agree that after two years the land should be taxed?

The facts show clearly that no benefit results to appellee from his land being included within the corporate limits of Covington, and there is no justice or propriety in his being compelled to pay a tax to sustain its local government. When the lands of the appellee shall be demanded for the extension of the city, and lots shall be laid off and built upon and used as other city property, partaking of the benefits of the local government, then there may be a reason for subjecting it to taxation. The case of *Cheaney vs. Hooser*, 9 *B. Monroe*, 345, is referred to on this point.

3. There is no proof that Southgate did consent, but on the contrary, the proof shows that he did not give such consent, but employed counsel to appear before the Legislature and oppose the act of 1850.

This power of taxation by cities and towns is liable to great abuse, and should be scrupulously guarded. We ask an affirmance.

February 5.

Chief Justice MARSHALL delivered the opinion of the Court—

This action was brought by Southgate to recover from the city of Covington $676, assessed under an ordinance of the city, and paid by him as a tax for the year 1852, upon one hundred and sixty-seven acres of land, of which he is the owner, and which was included within the boundaries of the city without his consent, by an act of the Legislature, passed in 1850. The tax, having been assessed, was paid to the city treasurer, under protest, and with reservation of the right to question its legality, by a suit to recover it back.

The plaintiff alleges that his land has been and is appropriated to fields, pasture-land, and wood-land; that there is much vacant ground between it and the populous parts of the city; that but few houses are near it, and it is not necessary for any purposes of

the city; that he has not laid it off into lots, and does not desire to do so, but wishes it to remain as heretofore, in fields, pasture-land, and wood-land.

The city, by its answer, puts most of these allegations in issue, and alleges that the town has extended, with houses and inhabitants, on two sides of the plaintiff's land; that there are many houses near it, and streets leading towards it in different directions; that it is needed for affording a passage from one part of the city to another, and that it is worth $3,000 per acre as city property, &c. The answer also alleges that the plaintiff, after opposing the act providing for extending the limits of the city, agreed to the extension on condition that his land should not be taxed for two years, which condition was acceded to and faithfully observed by the city.

The law and facts were submitted to the court, and upon hearing the evidence, which is incorporated in a bill of exceptions, the court rendered judgment in favor of the plaintiff, according to the prayer of the petition. To reverse that judgment the defendant appealed to this court.

It appears from the evidence that there are but few houses and many vacant lots in that part of the city which adjoins and is near the plaintiff's land, upon which there are neither lots, nor, so far as it is included within the extended boundary, are there any buildings for residence. And although it might be convenient to a portion of the city to have a passage over this land, it does not appear that even for that purpose it was necessary to include any large portion of it. Nor is the alleged consent of the plaintiff established by the evidence.

It appears from the plat or map of the city, which forms a part of the evidence in the case, that the land of Southgate, included in the extension, adjoins the former boundary for a considerable distance, but runs out a greater distance between lines which approach each other so as to leave but a short line between them, when they reach the extended or new

boundary. There is, however, on the eastern side of it, a large body of land, apparently several hundred acres,. included in the extension and reaching the Licking river, on which, at a considerable distance from the former boundary, and also from Southgate's land, there are several blocks of lots with streets, &c., covering a small plat of ground, containing, as we understand, some inhabitants, and which, we also understand, has been laid off into lots since the extension. It is this detached town or portion of the city which, as we understand, requires a passway for convenient access to the city. There are other modes of getting this passway if it be necessary, than by imposing upon a single individual so heavy an annual burthen, as that from which he is now seeking to be relieved. And we concur in what we suppose to have been the opinion of the Circuit Court that there was no legitimate necessity of the city, which required that this large portion of Southgate's land should, at the date of the act which the city procured without and against his consent, or should, even at this time, be included within its boundary. There is little reason to apprehend, that when the city actually grows up to the land now in question, the proprietor, whoever he may be, will withhold it from the necessities of a growing population.

Even if the land of Southgate be lawfully within the city, it cannot be coercively appropriated for streets, without that compensation which the constitution secures for private property taken for public use. And there is certainly no power to take any part of it for buildings or other private uses, but by contract with him. Then the only apparent purpose to be effected by including his land within the city against his consent, is, that of subjecting it to taxation for the benefit of the city, and without any advantage to him. If he owns other property, or has a place of business within the city, he doubtless bears therefor the appropriate common burthens, to which others, under like circumstances, are subject.

And although the taking of his land into the city will make its boundary on that side more regular, this is but an imaginary necessity, involving in this case no actual requirement of convenience or even of seemliness. The city being situated between two rivers, which will naturally attract population, the boundary on the land side may, without inconvenience or unseemliness, correspond with their course, and especially when, as in the present case, ample space is allowed for lots and buildings between the boundary, (excluding Southgate's land,) and the smaller of the two rivers. Besides, the irregularity in the new boundary, if Southgate's land be excluded, is produced by including the adjacent vacant land within the boundary as extended by the act in question. And as this adjacent land was included by the procurement of the city, and, as may be presumed, with the consent of the owners, but without the co-operation of Southgate, the question, even if a straight boundary were a necessity instead of a mere convenience or beauty, would still be, whether Southgate should be compelled to subject his land to taxation, on account of a necessity produced by others against his consent and for their own exclusive benefit. This would be to subject his interest and property to the control of others, and to heavy burthens, imposed at their will and for their advantage, without there being on his part any co-operation or combination with them, and without any act done by him from which it might be inferred that he either had consented or was under obligation to consent to such control and subjection; unless it be found (which it cannot be) in the fact, that he had before, perhaps long before, acquired and still holds land, which other parties now desire to control, and deem to be convenient, or by their own acts have made necessary for their own purposes. Such is not the tenure of property as secured by our constitution and laws.

CITY COVINGTON
vs.
SOUTHGATE.

Though the
Legislature may
have the power
constitutionally
to extend the
limits of towns
and cities, and
include adjacent
lands without
the consent of
the owner, and
which are not
laid off into
lots, and used
as town proper-
ty, (9 B. Mon-
roe, 344,) yet
the town or city
cannot tax such
property as town
property and
subject it to city
burthens, with-
out the consent
of the owner,
until it shall be
laid off into lots,
&c., and used as
town property,
when such parts
so laid off may
be taxed.

As Southgate has made no town upon his land and desires none, as there appears to have been no legitimate necessity which might justify the extension of the boundary so as to include it within the city against his consent, and as the obvious effect and probable purpose on the part of the city was to subject it to taxation for her own exclusive benefit, it would seem that if there can be a case of taking private property for public use in the form of taxation under color of an extension of the boundaries of a town or city, and without making compensation therefor, this must be regarded as one. That there may be such a case, is plainly admitted and clearly shown in the opinion of this court rendered in the case of *Cheaney vs. Hooser*, 9 *B. Monroe*, 344 and 345. And in the page last cited one of the instances stated as an example of such a case is where it is "palpable that persons or property are subjected to a local burthen for the benefit of others, or for purposes in which they have no interest, and to which they are therefore not justly bound to contribute." The case before us presents, as we think, the essential features of the case just stated. And as the legislative establishment or declaration of the extended boundary having been procured by the city may be regarded as her act, though under the legislative sanction, of which she has taken or attempted to take the benefit by the tax imposed upon Southgate's land, we think this is a case of taking private property for public use under the form of taxation, and that it is within the prohibitory clause of the constitution, and therefore unconstitutional and void. It follows that the assessment of this land for taxation by the city was without authority, and that she has no right to the money paid and received as tax under said assessment.

But it is the tax and not the boundary which is unconstitutional, and the city may still regard the land now in question as within her boundary, but subject to no other burthens than other lands not

within her boundary, until some portion of it shall be appropriated for lots or buildings indicating that it is used as a part of the city, when she may lawfully exercise the power of taxation with respect to such portion. And such perhaps should be regarded as the real intention of the Legislature, unless the contrary be plainly manifested, in the enactment of statutes by which the limits of a town or city are extended so as to embrace, without the consent of the owners, large tracts of land either entirely vacant or occupied as farms and for agricultural purposes. Be this as it may, the mere extension of boundary without an extension of the municipal authority of taxation is not in itself detrimental, and is not prohibited by the constitution. But taxation exercised under color of an unnecessary and unreasonable extension procured by the party to be benefitted, and against or without the consent of those who are to be taxed, is an oppression against which the constitution affords a protection to the individual, which the courts are bound to enforce, and which they will the more readily enforce, because such an extension, with its consequences, may be presumed not to have called forth the vigilance or scrutiny of the legislative body, nor to demonstrate its deliberate judgment and discretion.

Wherefore, the judgment is affirmed.